1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11
12
13
14
15

TAVITA PULETU,

              Plaintiff,

      v.

THE FISHING COMPANY OF ALASKA, INC.,

              Defendant.

CASE NO.  C05-1752RSM

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

16

## I.  INTRODUCTION

17
18
19
20
21
22
23

      This matter comes before the Court on defendant's motion for summary judgment. (Dkt. #16).  Defendant argues that plaintiff is not entitled to relief under the Jones Act because plaintiff relies solely on self-serving statements and speculation in regards to injuries he sustained over a four-year period while working aboard a vessel owned by defendant.  Plaintiff responds that he has made the requisite showing to survive summary judgment because there is a genuine issue of material fact as to whether defendant failed to provide plaintiff with proper medical attention after plaintiff sustained injuries aboard defendant's vessel.  (Dkt. #18).

24
25
26

      For the reasons set forth below, the Court agrees with defendant in part, and plaintiff in part, and therefore GRANTS IN PART and DENIES IN PART defendant's motion for summary judgment.

27
28

MEMORANDUM ORDER
PAGE - 1

## II.  DISCUSSION

### A.  Background

This lawsuit arises from plaintiff Tavita Puletu's employment with the defendant, The Fishing Company of Alaska, Inc. ("FCA"), from 2002 through 2005.  Plaintiff worked onboard the ALASKA JURIS, a factory trawler owned by defendant that catches and processes seafood in the Bering Sea and Aleutian Island waters.[1]  Prior to finishing his employment with defendant for the 2005 season, plaintiff filed an injury report on April 25, 2005, claiming that he had sustained four different injuries: a 2002 ankle injury; a 2003 rope burn to his knee that was aggravated in 2005; a 2005 left shoulder injury; and a 2005 right wrist injury.  In regards to the 2005 injuries, plaintiff alleges that he sustained the injuries sometime in February of 2005 while fulfilling his responsibilities aboard the ALASKA JURIS.[2]  Plaintiff testified that the 2005 injuries were not caused by one specific incident, but rather sustained over the course of the 2005 season that ran from January through April.  (Dkt. #18, Exhibit 1 at 58:19-25; 60:1-11).  Furthermore, plaintiff alleges that he was not immediately administered cure despite notifying Captain Steve Slovtig, the captain of the ALASKA JURIS, of his injuries in February of 2005.  Plaintiff alleges that he was kept on the vessel until April of 2005, thereby resulting in the aggravation and worsening of his underlying injuries.  After plaintiff ended his employment for the 2005 season in April, he sought medical care for his left shoulder and right wrist injuries in May of 2005.  Plaintiff brought the instant action against defendant on October 14, 2005 under 46 U.S.C. § 30104[3] - also known as the Jones Act - claiming unseaworthiness, maintenance and

---

[1] To the extent that there is a difference between the parties' versions of events, the Court views the facts most favorably to the non-moving party.

[2] Plaintiff's responsibilities included operating a banding machine, processing the vessel's catch, and lifting the vessel's net up and down.  (Dkt. #18, Exhibit 1 at 60:1-11).

[3] The Jones Act was formerly under 46 U.S.C. § 688 until it was amended in October of 2006.  The amended language does not affect this case, despite the fact that this case commenced prior to the amendment of the Jones Act.

1 cure, and general negligence by defendant.

2      The parties conducted and completed discovery on July 9, 2007.  Plaintiff presented

3 testimony of Dr. J. Chris Cancro, a shoulder physician, and Dr. William Wagner, a wrist

4 surgeon, who both testified that it was possible that plaintiff's injuries were exacerbated as a

5 result of the delay in treatment.  (Dkt. #18, Exhibit 2 at 14:13-23; Exhibit 3 at 16:22-25).

6 However, Dr. Wagner testified that there was no way he could claim with any medical certainty

7 that the delay was the precise cause of plaintiff's symptoms.  *Id.*, Exhibit 2 at 24:5-16.

8      Defendant now moves the Court for summary judgment on the grounds that plaintiff has

9 failed to present sufficient evidence that any alleged delay resulted in additional injury under the

10 Jones Act for plaintiff's 2005 injuries.  Defendant also argues that the 2002 ankle injury is

11 barred by the statute of limitations, and that the 2003 rope burn injury should be dismissed

12 because plaintiff has sought no medical treatment for the injury.

13      Plaintiff responds by agreeing to waive all claims based upon unseaworthiness of

14 defendant's vessel, all claims based upon maintenance and cure, and all claims related to the

15 2002 ankle injury and the 2003 rope burn.  The Court notes that plaintiff was two days late in

16 filing his response motion.  Pursuant to Local Rule 7(d)(3), "[a]ny opposition papers shall be

17 filed and served not later than the Monday before the noting date."  Here, the noting date was

18 August 17, 2007 and plaintiff filed his response brief on August 15, 2007.  Furthermore, under

19 Local Rule 7(b)(2), failure to file "may be considered by the court as an admission that the

20 motion has merit."  The Court holds that this result would be prejudicial to plaintiff, and

21 therefore will not consider plaintiff's failure to timely file as an admission of defendant's

22 summary judgment motion.  However, plaintiff's failure to follow the Court's rules in the future

23 may result in sanctions.

24      Moreover, plaintiff maintains his claims in relation to the 2005 injuries in his response.

25 Plaintiff argues that the prolongation of pain he sustained as a result of defendant's failure to

26 immediately remove plaintiff from defendant's vessel upon notice of plaintiff's injuries in

27
28 MEMORANDUM ORDER
PAGE - 3

1   February of 2005 entitles him to relief under the Jones Act.  Additionally, plaintiff raises a new

2   claim in his response, arguing that defendant is liable for negligence per se because defendant

3   employed an individual who did not hold medical certification to provide plaintiff with the

4   necessary medical care aboard the ALASKA JURIS.

5   **B. Summary Judgment Standard**

6   Summary judgment is proper where "the pleadings, depositions, answers to

7   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

8   genuine issue as to any material fact and that the moving party is entitled to judgment as a

9   matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247

10  (1986).  The Court must draw all reasonable inferences in favor of the non-moving party.  *See*

11  *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*,

12  512 U.S. 79 (1994).  The moving party has the burden of demonstrating the absence of a

13  genuine issue of material fact for trial.  *See Anderson*, 477 U.S. at 257.  Mere disagreement, or

14  the bald assertion that a genuine issue of material fact exists, no longer precludes the use of

15  summary judgment.  *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics,*

16  *Inc*., 818 F.2d 1466, 1468 (9th Cir. 1987).

17  Genuine factual issues are those for which the evidence is such that "a reasonable jury

18  could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.  Material facts

19  are those which might affect the outcome of the suit under governing law.  *See id.*  In ruling on

20  summary judgment, a court does not weigh evidence to determine the truth of the matter, but

21  "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc*., 41 F.3d

22  547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).  Furthermore,

23  conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat

24  summary judgment.  *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345

25  (9th Cir. 1995).

26

27

28

MEMORANDUM ORDER
PAGE - 4

**C.  Plaintiff's Waiver of Claims**

In his response, plaintiff has agreed to waive all claims based upon unseaworthiness of defendant's vessel, and all claims for maintenance and cure.  Plaintiff has also agreed to waive his negligence claims relating to the 2002 ankle injury and the 2003 rope burn.  Therefore the Court will dismiss those claims with prejudice.

**D.  Plaintiff's Negligence Per Se Claim**

Plaintiff also introduced a negligence per se claim in his response, alleging that defendant violated 46 C.F.R. § 12.13-1 because it did not produce any evidence during discovery that the vessel's captain, Captain Slovtig, possessed the requisite certification to treat plaintiff.  Under 46 C.F.R. § 12.13-1:

> [e]ach person designated to provide medical first aid on board ship, or to take charge of medical care on board ship, shall hold documentary evidence attesting that the person has attended a course of training in medical first aid or medical care, as appropriate.

*Id.*

However, plaintiff's claim is erroneous because Captain Slotvig has the requisite certification to treat seamen pursuant to the terms of 46 C.F.R. § 12.13-1.  (Dkt. #20, Exhibits A and B).  Further, plaintiff makes this claim after discovery was completed and without attempting to obtain such information during discovery, only assuming that because it was never produced by defendant that Captain Slovtig lacked the requisite certification.  This argument is a waste of judicial time and resources.  Therefore the Court will dismiss plaintiff's negligence per se claim with prejudice.

**E.  Plaintiff's Prolongation of Pain Claim Under the Jones Act**

Plaintiff's sole remaining claim is that defendant failed to immediately remove plaintiff from defendant's vessel upon notice of plaintiff's injuries, therefore resulting in a prolongation of pain that entitles plaintiff to relief under the Jones Act.  The Jones Act provides in pertinent part:

> A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the

MEMORANDUM ORDER
PAGE - 5

1    right of trial by jury, against the employer.

2    46 U.S.C. § 30104.

3        To recover on a Jones Act negligence claim, the plaintiff has the burden of proving, by a

4    preponderance of the evidence, that the defendant was negligent, and that such negligence was

5    the cause of injury to the plaintiff.  *See Havens v. F/T Polar Mist*, 996 F.2d 215, 218 (9th Cir.

6    1993); *see also Matson Navigation Co. v. Hansen*, 132 F.2d 487, 488 (9th Cir. 1942).  An

7    injury alone does not create Jones Act liability; the plaintiff must show that the employer's

8    conduct fell below the required standard of care.  *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d

9    331, 335 (5th Cir. 1997).  However, the "quantum of evidence necessary to support a finding of

10   Jones Act negligence is less than that required for common law negligence . . . and even the

11   slightest negligence is sufficient to sustain a finding of liability."  *Havens*, 996 F.2d at 218; *see*

12   *also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770-71 (9th Cir. 1981) (holding that a seaman

13   must demonstrate only that his employer's negligence played any part, even the slightest, in

14   producing his injury).  Courts should exercise special care in considering summary judgment in

15   Jones Act cases which require a very low evidentiary threshold for submission to a jury.

16   *Leonard v. Exxon Corp.*, 581 F.2d 522, 524 (5th Cir. 1978).

17       In the instant case, there are factual disputes that preclude the Court from granting

18   defendant's motion for summary judgment.  The parties are clearly in disagreement over

19   whether plaintiff properly notified Captain Slovtig of his injuries and whether plaintiff was

20   ultimately denied the medical treatment he was entitled to immediately thereafter.  Plaintiff

21   alleges in his deposition that he complained to Captain Slovtig in February of 2005.  The

22   relevant language of plaintiff's deposition provides in pertinent part:

23       Q:    When did you complain to [Captain Slovtig] in relation to when the problems
             began?
24
25       A:    In February [of 2005].

26       Q:    So the problems began in February?

27       A:    Yes.

MEMORANDUM ORDER
28   PAGE - 6

1   * * *

2   Q:    Do you remember anything else in that conversation?

3   A:    No.  Just that's what he told me.  Just told me just, you know, just stay for, just
4         hang on till I finish up my contract.  'Cause the thing that came like, if I don't
          finish my contract or that kind of stuff, I had to pay my fare to come home.

5   Q:    Did you agree with that plan?

6   A:    To come home?

7   Q:    To wait until the end of your contract to seek medical attention.

8   A:    No.

9   Q:    Did you tell him that?

10  A:    I told him, I'm not doing any good now.  I told him, like, I'm in pain like every
          day now.
11

(Dkt. #18, Exhibit 1 at 45:6-10; 47:11-24).
12
            Defendant, on the other hand, through the deposition of Captain Slovtig, alleges that no
13
    such notification by plaintiff was given.  The relevant language of Captain Slovtig's deposition
14
    provides in pertinent part:
15
16  Q:    Do you recall if Mr. Puleto ever came to you in 2005 in April and indicated to
          you that he was having should pain and lower wrist pain?

17  A:    Do not remember any such thing, sir.

18  Q:    Do you remember filling out an accident or illness report on or about April 25th
          of 2005?
19
    A:    Do not - I do not remember filling anything out.
20
    Q:    Do you recall ever reviewing a statement of person claiming injury report dated
21        on or about April 25, 2005 and signed by Mr. Puleto?

22  A:    I believe that was the day he left the vessel and he filled it out before he went to
          the airport.  But I'm not positive.  It's been too long.
23
    Q:    Did he tell you prior to that time that his shoulder was bothering him and he
24        wanted to get off the vessel?

25  A:    No sir.  Never said he wanted off the vessel.

26  Q:    Did he tell you at any time before April 25, 2005 that his wrist was bothering
          him and he wanted to get off the vessel?
27
    MEMORANDUM ORDER
28  PAGE - 7

A:   No, sir, he never wanted to get off the vessel that I was told.

* * *

Q:   At any point prior to April 25, 2005, did Mr. Puleto request medical attention and you turned him down?

A:   No, sir.

Q:   Did you ever tell Mr. Puleto to finish the contract before getting off the vessel and seeking medical attention?

A:   No, sir.  Unless you're talking about - I don't remember saying that.  When he left the vessel, it was a surprise to the mate and myself and the company.

(Dkt. #17, Exhibit G at 14:11-25; 15:3-25).

Given the conflicting deposition testimonies, it is clear that material facts which are central to plaintiff's remaining claim exist, thereby precluding the Court from granting summary judgment.  Moreover, whether a question of fact is presented is "narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played *any part at all* in the injury or death."  *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506-07, 77 S.Ct. 443, 448-49 (1957) (*Emphasis added*).  Here, there is a "quantum of evidence" through plaintiff's deposition that defendant may have played a part in plaintiff's injuries. While self-serving testimony and mere speculation is generally disfavored by courts, an injured seaman's own testimony may be sufficient evidence to survive summary judgment in suits brought under the Jones Act.  *See e.g., Ribitzki*, 111 F.3d at 661; 664 (finding that the injured plaintiff's own deposition testimony in regards to whether defendant breached its duty of providing a seaworthy vessel presented an issue of fact for the jury).  Combined with the low evidentiary threshold in Jones Act cases, the Court is constrained from dismissing plaintiff's claims, despite the fact plaintiff has not proffered any testimony other than his own to indicate that defendant was negligent in failing to respond to plaintiff's injuries.

Additionally, there is a factual dispute in regards to whether plaintiff's condition worsened between February and April of 2005.  Defendant argues that Dr. Wagner testified that there was no evidence that the alleged delay in treatment complicated or worsened plaintiff's

MEMORANDUM ORDER
PAGE - 8

1    wrist and shoulder conditions.  (Dkt. #19 at 4).  However, Dr. Wagner also testified that there

2    was a possibility that delayed treatment led to further injuries.  The relevant language of Dr.

3    Wagner's deposition provides in pertinent part:

4        Q:     If you have delayed treatment and the condition becomes chronic, does that have
                 an effect on the ability to recover a normal functioning; or in other words, you

5                  may recover, but it's not as good as it would have been if it had been treated
                 immediately?

6

7        A:     That's possible, yes.

8    (Dkt. #18, Exhibit 2 at 14:18-23).

9        Dr. Cancro also testified that there was a possibility that plaintiff's condition worsened

10    over time.  The relevant language of Dr. Cancro's deposition provides in pertinent part:

11        Q:     And continuing work for a length period of time, 30 days, 60 days, can
                 contribute to additional damage to the original injury?

12        A:     It could certainly make [plaintiff] more symptomatic.  I'm not sure about specific
                 damage except in a cumulative type way.  It could aggravate the condition, yes.

13        Q:     So if you had seen Mr. Puletu within a day or so after he developed these

14                  symptoms that you treated, would you have recommended that he continue to
                 work or use his shoulder?

15

16        A:     If I saw him as a physician, I would either modify his activity - I would have had
                 his activities modified or changed, yes.

17        Q:     And that's for the same reasons?

18        A:     Yes.

19        Q:     So a delay in treatment, can that lead to delayed recovery or incomplete recovery
                 and/or continued pain symptomology?

20

21        A:     It could contribute to persistent symptoms, pain, yes.

22    (Dkt. #18, Exhibit 3 at 16:22-25; 17 1-17).

23        Moreover, "[t]he test of a jury case [on the question of causation] is simply whether the

24    proofs justify . . . that employer negligence played any part, *even the slightest*, in producing the

25    injury . . . for which damages are sought."  *Lies*, 641 F.2d at 771 *(Emphasis added)*.  The Ninth

26    Circuit has described this test as the featherweight causation standard, allowing a seaman to

27    survive summary judgment by presenting even the slightest proof of causation.  *See Ribitzki*,

     MEMORANDUM ORDER

28    PAGE - 9

111 F.3d at 664.   Here, Dr. Wagner and Dr. Cancro both testified that there was a possibility that plaintiff's condition worsened due to his continual employment aboard defendant's vessel. Although defendants are correct in pointing out that Dr. Wagner cannot say with any degree of medical certainty that this is the case, the causation question is whether defendant's negligence played any part, even the slightest, in producing plaintiff's injuries.   Given the low evidentiary threshold in Jones Act cases, the Court holds that the respective doctor's testimonies present at least a triable issue of fact in regards to causation.

Furthermore, defendant requests[4]  that if plaintiff's prolongation of pain claim survives summary judgment, it should be entitled to briefly reopen discovery to supplement its expert witness reports because plaintiff has waited until the last minute to raise this claim.  (Dkt. #19 at 3).  However, plaintiff made clear in its complaint that prolongation of pain was a central part of its case.  Plaintiff's complaint provides in pertinent part:

> In or about February 2005, Plaintiff was in the course of employment when he took injured or ill, same being well known to the Captain but in derogation of said Captain's and Defendant's duty, Plaintiff was not administered cure but kept on the vessel resulting in aggravation and worsening of the underlying condition.

(Dkt. #1, Compl. ¶ 4).

Therefore it is reasonable for defendant to expect plaintiff to raise this argument in his response brief.  Nevertheless, in the interest of justice and to narrow the scope of this case even further, the Court agrees with defendant's request to briefly reopen discovery to allow the parties to supplement their expert witness reports to address this issue.  The Court sua sponte shall give the parties until October 5, 2007 to complete discovery as to plaintiff's prolongation of pain claim.

### III.  CONCLUSION

---

[4] This request is made in footnote 2 of defendant's reply brief.  (Dkt. #19 at 3).

MEMORANDUM ORDER
PAGE - 10

1    Having reviewed defendant's motion for summary judgment (Dkt. #16), plaintiff's

2  response (Dkt. #18), defendant's reply (Dkt. #19), the declarations in support of those briefs

3  and the exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS:

4    (1) Defendant's motion for summary judgment is GRANTED IN PART and DENIED

5  IN PART.  Plaintiff has waived all claims relating to his 2002 ankle injury and his 2003 rope

6  burn injury.  Additionally, plaintiff has waived all claims based upon unseaworthiness of

7  defendant's vessel and his claim for maintenance and cure.  Plaintiff also has no grounds to

8  bring its negligence per se claim.  Therefore these claims will be dismissed with prejudice.  The

9  sole remaining claim in this case is plaintiff's prolongation of pain claim under the Jones Act.

10    (2) The Court shall reopen discovery, and the parties will have until October 5, 2007 to

11  complete discovery regarding plaintiff's prolongation of pain claim.

12

13    DATED this 13th day of September, 2007.

14

15    RICARDO S. MARTINEZ
      UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27  MEMORANDUM ORDER
28  PAGE - 11